UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jerry Slight, *et al.*,

              Plaintiffs,

v.

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America*, et al.*,

              Defendants.

Case No. 3:20-cv-1590

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Thirty-five current and former employees of FCA US, LLC (now known as Stellantis), filed suit against their employer, their union, and eight individual defendants, alleging violations of federal and state law. (Doc. No. 64).[1] Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its administrative sub-unit United Automobile, Aerospace and Agricultural Implement Workers of America, Region 2B (collectively, "UAW"); FCA; Jerome Durden; Alphons Iacobelli; Virdell King; and Gary Jones move to dismiss the Second Amended Complaint. (Doc. Nos. 91, 92, 93, 94, 95, and 96). Plaintiffs filed a brief in opposition to Durden's motion and an omnibus brief in opposition to the remaining motions. (Doc. Nos. 97 and 101). All Defendants except Durden filed reply briefs in support of their motions. (Doc. Nos. 105,

---

[1] Plaintiffs initiated this litigation on July 20, 2020. (*See* Doc. No. 1). They filed their second amended complaint on June 25, 2021. (Doc. No. 64).

106, 107, 108, and 109). For the reasons stated below, I granted Defendants' motions and dismiss this case.

## II.    BACKGROUND

In 2007, Plaintiffs were hired as temporary part-time employees ("TPTs") at the Chrysler Auto Plant in Toledo, Ohio. (Doc. No. 64 at 6). Plaintiffs allege that TPTs were supposed to work Mondays, Fridays, and Saturdays only, and to remain in that position for no more than 120 days before being offered employment as permanent employees. (*Id.* at 6-7). TPTs were to receive "preferential hiring consideration" for permanent employment in the order of their initial hiring date. (*Id.* at 7). Plaintiffs allege that, instead, they were often required to work full-time and even overtime hours, did not receive preferential consideration, and were not hired as permanent employees until March 2013. (*Id.*). They further allege that other individuals from outside of the company were hired as permanent employees before them and also received higher rates of pay than Plaintiffs did when Plaintiffs became permanent employees. (*Id.* at 7-8).

In July 2013, the UAW filed grievances regarding the alleged violations of the Collective Bargaining Agreement between the UAW and FCA on behalf of Plaintiffs and similarly-situated TPTs initially hired in 2007. (*Id.* at 9). But, Plaintiffs allege, the UAW did not pursue those grievances and instead withdrew them on January 31, 2014. (*Id.*). Plaintiffs allege that, in the months that followed, various UAW officials worked to conceal the fact that the grievances had been withdrawn, and Plaintiffs did not learn of the withdrawal until October or November 2014. (*Id.*).

After allegedly being told there were no further remedies available through the grievance process, a group of TPTs, including some of the Plaintiffs in this case, filed suit. (*Id.* at 9-10); *Slight v. U.A.W.*, Case No. 3:15-cv-664 (N.D. Ohio) (the "2015 Case"). The 2015 Case concluded on March 29, 2021, when I entered judgment in favor of the UAW and FCA after concluding Plaintiffs

had failed to exhaust their internal union remedies. *Slight v. U.A.W.*, Case No. 3:15-cv-664, 2021 WL 1176779 (N.D. Ohio Mar. 29, 2021). Plaintiffs filed this lawsuit a few months later and now pursue claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for civil conspiracy in violation of Ohio law. (*See* Doc. No. 63).

### III.    STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of

3

what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir. 2008).

While a Rule 12(b)(6) motion ordinarily is not the appropriate vehicle from which to pursue dismissal based upon an affirmative defense, a court should grant such a motion if the complaint "shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## IV. ANALYSIS

### A. RICO CLAIMS

Defendants first argue that Plaintiffs' RICO claims are barred by the applicable statute of limitations.[2] The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The limitations period begins to run when a plaintiff discovers the injury underlying the claim. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). *See also Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1177 (6th Cir. 2023) (applying the injury-discovery rule and dismissing plaintiffs' civil RICO claims as untimely).

---

[2] All Defendants except Durden raised a statute of limitations defense in their motions to dismiss. (*See* Doc. No. 91). Plaintiffs argue I should deny Durden's motion because he failed to offer any substantive argument in support of his motion. (Doc. No. 97). But a defendant's failure to raise an affirmative defense such as the statute of limitations does not invariably result in waiver. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (further citation omitted). Other district courts have concluded that the interests of justice require a court to consider a statute of limitations defense "as not having been waived" by a defendant who fails to assert it when the defense "was raised by each of the other defendants and responded to by the plaintiff," and where the issues raised by the defense are identical for all defendants. *P & E Elec., Inc. v. Util. Supply of Am., Inc.*, 655 F. Supp. 89, 95 n.1 (M.D. Tenn. 1986) (citations omitted). I conclude it is appropriate to extend my analysis of the statute of limitations defense to Durden as well, because all other Defendants raised the defense and the facts and issues underlying the defense are identical for all Defendants.

4

The Sixth Circuit's decision in *Baltrusaitis* controls the outcome of Defendants' motions. In that case, the plaintiffs were 47 current and former FCA engineers and UAW members. In 2011, Iacobelli transferred the plaintiffs' work locations from FCA's headquarters in Auburn Hills, Michigan to an FCA facility in Trenton, Michigan, approximately one hour away. *Baltrusaitis*, 86 F.4th at 1173. The plaintiffs did not receive any additional compensation for the additional travel time and fuel costs or the wear and tear on their personal vehicles. *Id.* They subsequently learned other workers, including most of the management employees in their division, were not required to commute and were given additional privileges not available to the plaintiffs. *Id.* In 2015, the plaintiffs filed a grievance concerning their 2011 transfer, but the UAW did not purse the grievance beyond the second step of the grievance process. *Id.*

Two years later, Iacobelli was federally indicted for violations of federal labor law and tax evasion for his role in a bribery scheme in which FCA officials had been paying bribes to Iacobelli and other UAW officials in exchange for concessions in collective bargaining and for the union acting for the company's benefits on grievance. *Id.* The *Baltrusaitis* plaintiffs then filed another grievance concerning the 2011 transfer, asserting the transfer stemmed from collusion between FCA and UAW officials like Iacobelli. *Id.* FCA twice denied the grievance as untimely and without merit, before the UAW withdrew the grievance. *Id.* at 1174. The plaintiffs appealed on December 8, 2017, but the appeal was denied as untimely. *Id.*

They filed another "essentially identical" grievance on February 2, 2018. The plaintiffs exhausted their internal remedies and subsequently filed suit, asserting RICO claims, RICO conspiracy claims, and state civil conspiracy claims, among others. *Id.* The district court concluded the plaintiffs' RICO and RICO conspiracy claims were barred by the statute of limitations and declined to exercise supplemental jurisdiction over the state-law claims. *See Baltrusaitis v. Int'l Union,*

5

*United Auto., Aerospace & Agric. Implement Workers of Am.,* No. 20-12793, 2022 WL 868423 (E.D. Mich. Mar. 23, 2022)

The Sixth Circuit affirmed the district court's decision on appeal. Relying on the Supreme Court's decision in *Rotella*, the court of appeals applied the injury-discovery rule and concluded the statute of limitations had begun to run in 2011 or 2012, when the plaintiffs first learned of the alleged violations of the collective bargaining agreement. *Baltrusaitis*, 86 F.4th at 1177. The Sixth Circuit concluded the RICO claims were time barred because the plaintiffs did not file suit until 2020, eight years after the latest date on which their claims could have accrued.

The injury-discovery rule compels the same result in this case. Plaintiffs learned of the alleged violations of their pay and seniority rights by at least July 2013, when the UAW first filed grievances on their behalf. (Doc. No. 64 at 9). They learned the UAW withdrew the grievances without their consent no later than November 2014. (*Id.*). But they did not initiate this litigation until July 20, 2020, well past the four-year limitations period. (*See* Doc. No. 1). Therefore, Plaintiffs' RICO and RICO conspiracy claims are barred by the statute of limitations. *Baltrusaitis*, 86 F.4th at 1177.

Plaintiffs resist this conclusion. They first argue that the caselaw in the Sixth Circuit is "unsettled" because various unpublished appellate decisions, as well as published and unpublished district court opinions, applied other claim accrual rules. (Doc. No. 101 at 16-22). This argument lacks merit. Nearly all of the cases Plaintiffs cite pre-date *Baltrusaitis*. To the extent those cases are in conflict with *Baltrusaitis*, the Sixth Circuit's published decision in that case now provides the relevant and binding rule of law.

Plaintiffs also argue, relying on the Sixth Circuit's decision in *Snyder-Hill v. Ohio State University*, 48 F.4th 686 (6th Cir. 2022), that they did not discover their injuries until 2017, because

6

they did not learn of the bribery scheme until Iacobelli's indictment.[3] (Doc. No. 101 at 21-22); (*see also id.* at 22) (arguing the cause of their injuries "was not a mere breach of the collective bargaining agreement . . . [but] the conspiracy between plaintiffs' employer and their labor union to deprive plaintiffs of a fair evaluation of their grievances, and then later in the process, a denial of their legitimate appeal rights").

But Plaintiffs knew both of their injuries – FCA's violation of their pay and seniority rights and the UAW's violation of its duty of fair representation – and the cause of those injuries – FCA's denial of their grievances and the UAW's subsequent withdrawal of the grievances – no later than November 2014, when Plaintiffs discovered the UAW had withdrawn the grievances. (Doc. No. 64 at 9). Plaintiffs have not identified any binding caselaw suggesting that the limitations period does not begin to run until a plaintiff uncovers a pattern of corrupt activity and, as Defendants point out, the Supreme Court explicitly rejected "the injury and pattern discovery rule" in the RICO context. *Rotella*, 528 U.S. at 554-59.

Plaintiffs offer two additional arguments. They contend the separate accrual rule extends the limitations period because Defendants concealed and later downplayed the bribery scheme and its alleged connection to Plaintiffs' injuries. (Doc. No. 101 at 22-26). And they argue they are entitled to equitable tolling of the limitations period because FCA and the UAW fraudulently concealed the bribery scheme. (*Id.* at 26-29). Neither argument is persuasive.

The separate accrual rule, which has been adopted by some Circuits, provides that "the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff [in a civil RICO case] to recover for the additional damages caused by that act." *Klehr v. A.O. Smith*

---

[3] "[U]nder the discovery rule, a claim accrues 'when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury.'" *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022) (quoting *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010)) (further citation and quotation marks omitted).

7

*Corp.*, 521 U.S. 179, 190 (1997). This rule requires plaintiffs so show "how any new act could have caused them harm over and above the harm that the earlier acts caused." *Id.*

Plaintiffs contend Defendants' "continued coverup and obfuscation during litigation, both before and after the bribery scheme was made public, caused plaintiffs ongoing financial and employment status harm, but in addition caused them the harm of losing their rights to have grievances heard, of being able to fairly litigate their claims with the benefit of complete and accurate information." (Doc. No. 101 at 25).

But *Baltrusaitis* forecloses this argument too. There, the panel noted that the Sixth Circuit has declined to adopt the separate accrual rule and held that, even if it had adopted the rule, it would offer the plaintiffs no relief. The *Baltrusaitis* court ruled that the plaintiffs in that case, who were wronged by the same fraud scheme alleged in this case, did not identify any new injuries suffered during the limitations period and pointed only to the perpetuation of the original harm they suffered. *Baltrusaitis*, 86 F.4th at 1178 (stating "plaintiffs complain that the UAW repeatedly failed to fix the injuries they sustained in the 2011 transfer" and concluding "[t]hose grievance denials didn't create 'harm over and above the harm that the earlier acts caused.'") (quoting *Klehr*, 521 U.S. at 190).

The same is true here. Plaintiffs knew the UAW had interfered with their right to have their grievances heard when they learned, no later than November 2014, that "[v]arious union officials made blatant and repeated misrepresentations to plaintiffs about the status of the grievances" throughout most of 2014. (Doc. No. 64 at 9). That much is established by the 2015 Case, in which many of the Plaintiffs pursued claims against FCA and the UAW for violations of the Collective Bargaining Agreement and the union's duty of fair representation. *See Slight v. UAW*, 3:15-cv-664, Doc. No. 1 (N.D. Ohio Apr. 5, 2015). As in *Baltrusaitis*, Defendants' failure to remedy the harm they created does not trigger application of the separate accrual rule.

8

Lastly, Plaintiffs' equitable tolling arguments fall short as well. A plaintiff who alleges a statute of limitations should be equitably tolled due to a defendant's fraudulent concealment of unlawful activity must show that he has exercised "reasonable diligence" in pursuing his claim. *Klehr*, 521 U.S. at 194. Plaintiffs contend they acted with reasonable diligence by "actively litigating the bribery issue" in the 2015 Case. (Doc. No. 101 at 29). The plaintiffs in the 2015 Case filed a Rule 60(b) motion seeking relief from my order granting summary judgment in favor of FCA and the UAW while the case was on appeal. *Slight v. UAW*, Case No. 3:15-cv-664, Doc. No. 62 (N.D. Ohio Jan. 30, 2018). But that motion raised the bribery scheme in the context of the plaintiffs' claims under the Labor and Management Relations Act and made no mention of a civil RICO claim. *Id.* Plaintiffs did not raise their RICO claims until July 20, 2020, nearly three years after Iacobelli's indictment became public and two and a half years after their Rule 60(b) motion. Plaintiffs fail to show they diligently pursued their known rights under the RICO statute. *See Baltrusaitis*, 86 F.4th at 1178-79. Therefore, I conclude they have not met their burden to show they are entitled to equitable tolling of the statute of limitations.

## V. CONCLUSION

Numerous FCA and UAW officials engaged in a massive and long-running bribery scheme that undoubtably created substantial adverse consequences for hundreds, if not thousands, of workers, including Plaintiffs here. But because I conclude the applicable statute of limitations bars their claims, I must dismiss Counts One and Two of the Second Amended Complaint. I decline to exercise supplemental jurisdiction over Plaintiffs' state-law claim in Count Three and dismiss that claim without prejudice. 28 U.S.C. § 1367. This case is closed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge